IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| GEORGE SHELBY,<br><br>    Plaintiff,<br><br>vs.<br><br>FOUR CORNERS PRECISION MFG. CO., d/b/a A-1 DISPOSAL,<br><br>    Defendant. | MEMORANDUM DECISION & ORDER ON PENDING MOTIONS AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:02-CV-696 TS |

    This matter is before the Court on all pending motions. The Court grants Defendant A-1 Disposal's Motion for Summary Judgment because Plaintiff has not come forward with facts to establish the essential elements of his claims for violation of the Americans With Disabilities Act (ADA); his claim for intentional infliction of emotional distress is barred by the exclusivity provisions of the Workers' Compensation Act; and his claim for wrongful discharge in violation of public policy is preempted by the Utah Antidiscrimination Act (UADA).

## I.  PROCEDURAL HISTORY

On July 18, 2002, Plaintiff filed this case against his former employer, A-1 Disposal. On August 17, 2004, A-1 Disposal moved to dismiss the case for lack of prosecution. On October 19, 2004, the court denied the Motion to Dismiss as follows:

> The court agrees that there has been delay in this case.  However, on September 9, 2004, an Initial Pretrial Conference was held, deadlines set and a trial date scheduled.  In view of the current schedule, the court will not dismiss the case at this time. However, any further delay by Plaintiff in meeting his responsibilities as a litigant will result in the dismissal of this case.

October 19, 2004 Order (Docket No. 18).

On December 30, 2004, A-1 Disposal filed a Motion to Dismiss or Alternately, for Motion in Limine and Motion to Amend Scheduling Order.  A-1 Disposal sought to have the case dismissed because Plaintiff had not provided expert reports.  In the alternative, A-1 Disposal sought to limit Plaintiff's evidence at trial.  In addition, A-1 Disposal also sought to amend the scheduling order to allow it to file a motion for summary judgment.  Finally, A-1 Disposal sought hearing on its Motion.

A-1 Disposal's Motion was not immediately set for hearing due to the odd circumstance of its combining a motion to dismiss--a matter handled by this court--with a request to amend the scheduling order--a matter ordinarily heard by a magistrate judge.

In the meantime, while the first Motion was pending, A-1 Disposal filed a Motion for Summary Judgment or for Motion in Limine.  The Court grants A-1 Disposal's Motion to extend the time to file a motion for summary judgment to the date the Motion was filed.

## II.  FACTS

There are many factual disputes in this case.  What is undisputed is that on May 11, 2001, Plaintiff started work for A-1 Disposal as a truck driver hired to drive a dump truck and pick up trash dumpsters.  On June 11, 2001, while working alone, he alleges he hurt his back when he manually pulled a garbage dumpster into position for his truck to pick it up.

Thereafter, the parties have very different versions of the facts.  The facts in the light most favorable to Plaintiff show the following: When he returned to A-1 Disposal's facility without finishing his route, he spoke with an individual whom he claims was a shop manager.  A-1 Disposal claims the individual was merely a mechanic.  Plaintiff alleges that the individual told him that he had to finish a brake check before he could leave for the day, despite Plaintiff having told him he was in excruciating pain.  Plaintiff completed the brake check and exacerbated his injury.  The two had a conversation about Plaintiff's condition.  Plaintiff says that the individual told him that if he left without finishing the route, he would take it that Plaintiff was quitting.

The next day, Plaintiff called A-1 Disposal about where to go for medical help and to speak to the manager.  Plaintiff contends that he told the manager the route was too big and he needed help.  He contends that the manager told him perhaps he was not the right man for the job and it was best if he quit.  Plaintiff never returned to work at A-1 Disposal.  The same day, he was told by A-1 Disposal that his workers' compensation forms would be completed and forwarded to him.  But the next day, when Plaintiff's chiropractor called

to verify coverage, A-1 Disposal informed the chiropractor that the injury was not work-related.

When his workers' compensation papers were not forthcoming, Plaintiff returned to the office to pick them up on June 16, 2001. He was told they would be processed. When he went in for treatment later that day, the provider again called A-1 Disposal for verification, and was told that the injury was not work-related.

Plaintiff applied for worker's compensation, which he eventually received. He applied for unemployment, which was initially denied on the basis that A-1 Disposal claimed he had voluntarily quit his job, and that he was unable to work due to illness or injury. On appeal however, his claim was ultimately denied as moot because he had used all available benefits. Plaintiff also filed and prevailed on a wage claim against A-1 Disposal.

According to Plaintiff, he was limited in the medical care he could receive and has been unable to receive the necessary treatment and rehabilitation for his herniated disc and nerve compression because of the delay in receiving Worker's Compensation.

III.   MOTION TO DISMISS, IN LIMINE AND TO AMEND SCHEDULING ORDER

A-1 Disposal seeks to have the case dismissed because Plaintiff has not provided expert reports for the health care providers listed on his expert disclosures or, in the alternative, to limit their trial testimony to the matters disclosed, which consist of their medical records and reports.

Plaintiff contends that he is not required to provide expert reports because the witnesses he listed in his expert disclosures are treating physicians.

As an initial matter, the Court finds that the alleged failure to file an expert report is not a matter which would warrant the extreme sanction of dismissal because "a lesser sanction," such as disallowance of expert testimony, would be an effective sanction.  *See Reed v. Bennett*, 312 F.3d 1190, 1196 (10th Cir. 2002) (listing five factors to be considered in determining whether to exercise court's discretion to dismiss a case for failure to prosecute).  Accordingly, the Motion to Dismiss will be denied.

The Court next notes that consideration of this Motion is hindered by the uninformative nature of the Expert Disclosures.  For each of the six health care providers listed, Plaintiff lists only their names and their medical records and/or reports, which Plaintiff states were previously provided during the workers' compensation proceedings.  Nowhere does the disclosure state the substance of the expected testimony.  More importantly, none of these individuals were identified as fact witnesses.

The December 2000 Amendment to Fed. R. Evid. 701 added the following italicized language to Rule 701:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, [ ] (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, *and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702*.

Fed. R. Evid. 701 (emphasis added)

As noted in the advisory committee notes to 2000 amendments:

the amendment does not distinguish between expert and lay *witnesses,* but rather expert and lay *testimony.* Certainly it is possible for the same witness to provide lay and expert testimony in a single case . . .. The amendment makes clear that any part of a witnesses' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule

702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules.

*Id.* (emphasis in original). The advisory committee notes also make it clear that "a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 . . . by simply calling an expert witness in the guise of a layperson." *Id*.

As amended, Rule 701 is not a major change from the Tenth Circuit's prior interpretation of the treating physician as expert witness. In *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999), an ADA case decided before the Rule 702's amendment, the Tenth Circuit held: "A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." But, the current version of Rule 701 appears to tighten or eliminate the former interpretation of Rule 701 under which a doctor testifying as a lay witness would be given "loose rein to state what are truly facts, even if they are 'expert' facts". *See Id*. (quoting Weinstein's Federal Evidence § 701.08). Now, treating physicians testifying as fact witnesses will no longer be given such "loose rein."

Thus, if the treating physicians identified by Plaintiff had been identified as fact witnesses they could have testified as to their knowledge insofar as their testimony was first-hand participant testimony of their treatment and diagnosis of Plaintiff.

However, the procedural posture in this case is that these persons were not identified as fact witnesses as required by Rule 26(a)(1)(A). Instead, they were only identified as expert witnesses. Rule 26(a)(2)(A) makes it clear that disclosure of the identity of experts is "in addition to," and not a substitute for, the disclosure of fact witnesses.

Plaintiff contends that because his six listed experts were not "retained or specially employed to provide expert testimony" in this case, they are exempt from the expert report requirement of Rule 26(a)(2)(B).  A-1 Disposal has not shown that they were retained or specially employed to provide expert testimony in this case and therefore the report requirement does not appear to apply.   Under these circumstances, it is difficult to know what their testimony will be as it will be limited to expert testimony, and not to the factual testimony of their treatment and diagnosis of Plaintiff.  The Court will grant the motion in limine and will exclude the health care providers as fact witnesses because they were not disclosed as fact witnesses.  The court will not exclude their expert testimony because A-1 Disposal has not shown that the expert report requirement was applicable.  Similarly, the court will not limit their testimony to the reports listed on the disclosure because the report requirement is not applicable.

Finally, Plaintiff sought leave to amend the scheduling order to file a Motion for Summary Judgment.  The Court grants the motion because Plaintiff did not specifically oppose the request for an extension of time to file a Motion for Summary Judgment in its response, although it did oppose as untimely the summary judgment once it was filed.  The Court also finds good cause to extend the time as a result of the delay in this case incident to the resolution of the issue of the expert testimony by treating physicians.  The Court finds that Plaintiff is not prejudiced by the extension of time and that the parties have fully briefed the motion.

## IV.  SUMMARY JUDGMENT

A.  Standard

The standard for summary judgment is well known and need not be repeated herein except to note that the party, in this case A-1 Disposal, who does not bear the burden of persuasion at trial, meets its initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law by "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted).  Once the movant does so, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.  To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* (internal citations partially omitted).

B.  ADA Claim

In this case, A-1 Disposal contends that Plaintiff has not met the elements of a claim under the ADA.  Specifically, it has pointed out the absence of evidence on Plaintiff's ADA claim.  A-1 Disposal  In support, A-1 Disposal makes several arguments, including that Plaintiff voluntarily left his job; he has not shown that he is a disabled person who is qualified, with or without accommodation, to perform the essential tasks of his job as a truck driver; and that he has not listed a single witness who can testify as to an accommodation that would allow him to perform the essential tasks of his job.

Plaintiff seeks to strike the affidavit offered by A-1 Disposal's office manager, regarding the essential job functions for its truck drivers and the availability of other positions; disputes that he voluntarily left his job; and contends that he asked for and was denied time off for medical treatment as a reasonable accommodation.

The Court finds that A-1 has met its initial burden of pointing out Plaintiff's lack of evidence on the essential elements of his prima facie claim under the ADA. The Court further finds that Plaintiff has failed to meet his burden of setting forth specific facts which would be admissible as evidence at trial and from which a reasonable jury could find for him on his claim under the ADA.

> To prevail on [his] ADA claim, [plaintiff] must establish: (1) [he] is a disabled person as defined by the ADA; (2) [h]e is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) [his] employer discriminated against [him] because of [his] disability. *Butler v. City of Prairie Vill.,* 172 F.3d 736, 748 (10th Cir. 1999).
>
> * * *
>
> The statute defines disability as . . . (1) a physical or mental impairment that substantially limits one or more of an individual's major life activities, 42 U.S.C. § 12102(2)(A); . . . . An analysis under 42 U.S.C. § 12102(2)(A) requires a three-step process: (1) we consider whether [plaintiff's condition] is a physical impairment, (2) we identify the life activity upon which [he] relies and determine whether it constitutes a major life activity under the ADA, and (3) we ask whether the impairment substantially limited the major life activity. *Bragdon v. Abbott,* 524 U.S. 624, 631 (1998). "[W]hether a claimed affliction constitutes an impairment under the ADA and whether the identified endeavor constitutes a major life activity are determinations of law for the court to decide." *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.,* 168 F.3d 1228, 1230 (10th Cir.1999).
>
> [Where the defendant does not dispute that plaintiff has an impairment] a jury could reasonably conclude, even without expert medical testimony, that [the plaintiff has an impairment within the meaning of the ADA]. . .*See* 29 C.F.R. § 1630.2(h)(1) [defining physical impairment].

9

> As to the second element, [Plaintiff] must precisely identify a major life activity affected by [his] impairment. *Poindexter,* 168 F.3d at 1232. . . . In accordance with EEOC regulations, this court has recognized "working" as a major life activity. However, to establish that one is disabled, one must show that one is "significantly restricted" in performing a major life activity "as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). In addition, in any claim where working constitutes a major life activity, a plaintiff must demonstrate [he] is unable to perform either a class of jobs or a broad range of jobs in various classes. *Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117,1134 (10th Cir. 2003) (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491-492 (1999)). No such showing has been made here.
>
> Based on the above, we conclude as a matter of law that [plaintiff] has not demonstrated an impairment to a major life activity. Therefore, [plaintiff] has failed to establish the first prong of [his] prima facie case, that [he] is a disabled person under the ADA.

*MacKenzie v. City and County of Denver,* 414 F.3d 1266, 1274 -1276 (10th Cir. 2005) (citations partially omitted and footnotes omitted).

Plaintiff points out that the Court must consider whether he was disabled at the time of the employment decision, here the date that he alleges he was denied accommodation and terminated from his job. Plaintiff contends, and A-1 Disposal does not dispute, that he has impairments. But Plaintiff does not identify what major life activity those impairments substantially limit. It is not sufficient to state a claim under the ADA to have undisputed physical impairments–they must be tied to a major life activity and also substantially limit that major life activity. *Id*. (ADA plaintiff "must precisely identify a major life activity affected by [his] impairment").

> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those "claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by

their impairment] in terms of their own experience . . . is substantial." *Albertson's, Inc. v. Kirkingburg*, 119 S.Ct. at 2162.

*Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002) (internal citations partially omitted).

To meet his burden on summary judgment, Plaintiff must do more than just show he has designated experts and that those experts found he had impairments or that he could not perform his particular job at A-1 Disposal. He must point to specific evidence that would meet his burden of showing that he is disabled within the meaning of the ADA.

Careful review of all of the evidence shows Plaintiff's submissions in opposition to summary judgment fail to reveal any evidence that he is "'significantly restricted' in performing a major life activity 'as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'" *MacKenzie,* 414 F.3d at 1275-76 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Even assuming that the major life activity at issue was working, this case is similar to *MacKenzie*, *supra*, in that Plaintiff has failed to produce any evidence to meet his burden of establishing that he "is unable to perform either a class of jobs or a broad range of jobs in various classes." *Id*.

Testimony on the comparison of a person's level of restriction compared to the general population and a class of jobs is ordinarily a matter for expert testimony, *see Bolton v. Scrivner*, 36 F.3d 939, 944 (10th Cir. 1994), and Plaintiff has pointed to no such testimony or evidence, expert or otherwise, in this case.

Plaintiff has shown evidence in this case that he was unable to return to his job at A-1 Disposal for an indeterminate amount of time. But a plaintiff's "inability to return to his

11

particular job without some accommodation does not demonstrate a substantial limitation in the major life activity of working." *Id.*, at 943.  *See also* 29 C.F.R. § 1630.2(j)(3)(I) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major activity of working.").

To the extent that Plaintiff is claiming that A-1 Disposal's actions caused or exacerbated his injury or impairment, his remedy lies in the Workers' Compensation Act, not the ADA.  *Smith v. Blue Cross Blue Shield of Kansas,* 102 F.3d 1075 (10th Cir. 1996).

Because Plaintiff has not met his burden of showing a prima facie case that he is an individual with a disability, he is not covered by the ADA and the Court need not address the parties' other contentions regarding the ADA.  Similarly, the Court need not address Plaintiff's Objections to the filing of A-1 Disposal's Affidavit in support of its position on those issues.  The court will grant A-1 Disposal summary judgment on the ADA claim.

      C.      Intentional Infliction of Emotional Distress

A-1 Disposal seeks summary judgment on Plaintiff's claim under Utah law for intentional infliction of emotional distress because his claim is barred by the exclusive remedy of the Workers' Compensation Act and he fails to allege conduct that is so intolerable that it offends generally accepted standards of decency.  Plaintiff contends that his claim is not barred because it is based on intentional conduct.

Utah's Workers' Compensation Act prohibits an injured worker from bringing common law torts against his employer arising from his employment, unless the employee

"shows the employer or a fellow employee manifested a deliberate intent to injure him." *Lantz v. National Semiconductor Corp.*, 775 P.2d 937, 940 (Utah Ct. App. 1989).

Having considered Plaintiff's evidence in its entirety, he does not show a prima facie case of an intentional injury that would place him outside the exception to the exclusive provisions of Utah's Workers' Compensation statutes.

Plaintiff's evidence, viewed in the light most favorable to him, is that his injury was exacerbated when A-1 Disposal's agent required him to finish a task despite his injury; fired him because he was injured and unable to do his job; and twice denied to medical providers that his injury was work related.

The exclusive bar of the Workers' Compensation Act applies where an employer is alleged to have refused the employee time off for treatment for necessary medical treatment. *Cook v. Zions First National Bank,* 57 F.3d 1084 (Utah 2002). It also applies where the employer is alleged to have intentionally delayed payments, unless the delay is accompanied by allegations of egregious behavior. *Gunderson v. May Dept. Store Co.*, 955 P.2d 346, (Utah Ct. App. 1998). The evidence in the present case, viewed from the light most favorable to Plaintiff, fails to show a level of egregious acts that rise to the level of an intentional tort. They also do not constitute conduct that is so intolerable that it offends generally accepted standards of decency. Therefore, the court will grant A-1 Disposal summary judgment on his intentional infliction of emotional distress claim.

D.  Wrongful Termination in Violation of Public Policy

The Court agrees with A-1 Disposal that Plaintiff's claim for wrongful termination in violation of public policy is preempted by the Utah Antidiscrimination Act (UADA). *See*

*Gottling v. P.R. Inc.*, 61 P.3d 989, 993 (Utah 2002). The Court will grant summary judgment on this claim.

## V.   ORDER

Based upon the foregoing, it is therefore

ORDERED that Plaintiff's DUCivR 7-1(f) Request for Oral Argument on Defendant's Motion to Dismiss, or Alternatively to Modify Scheduling Order (Docket No. 25) is DENIED as moot. It is further

ORDERED that Defendant's Motion to Dismiss is DENIED (Docket No. 19); It is further

ORDERED that Defendant's Motion in Limine is GRANTED IN PART AND DENIED IN PART (Docket No. 19) as set forth above. It is further

ORDERED, that Defendant's Motion to amend Scheduling Order (Docket No. 19) is GRANTED and the Court deems Defendant's Motion for Summary Judgment to be timely filed.   It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 26) is GRANTED and Defendant shall have judgment on all of Plaintiff's claims. It is further

ORDERED that Defendant's alternative Motion in Limine (Docket No. 26) is DENIED as MOOT. It is further

ORDERED that all other pending motions are denied as moot. It is further

ORDERED that the clerk of court shall enter judgment in favor of Defendant and against Plaintiff on all claims and close this case.

DATED this 27th day of September, 2005.

BY THE COURT:

_____
TED STEWART
United States District Judge